## (March 9, 1971)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BRUCE SIMON, Appellant, et al., Defendants.—

Concur — Stevens, P. J., Capozzoli and Macken, JJ.; McGivern and Nunez, JJ., dissent in the following memorandum by McGivern, J.: I am not satisfied this defendant was tried in a manner devoid of prejudice. At the time of the events, Bruce Simon was 22 years of age, without a previous offense. From the record (and the probation report) he emerges as an only child, spoiled, middle-class, suburbanite, whose Bohemian life style was at odds with his conforming parents. During adolescence, he had been treated psychiatrically. The sentence minutes refer to " a long history of mental disturbance. * * * An encephalogram indicated there was brain damage ". At the time of the offense, he was living with a young lady, in a studio in the Village. And she was a nurse at the Mount Sinai Hospital. Come February 28, 1967, the defendant was indicted by two separate indictments: (1) for the sale of marijuana, with Ann Wright, on January 18, 1967, and (2) for the sale of demerol, with Anthony Testino, on February 3, 1967. But, he was tried the first time, on January 5–12, 1968, only for the sale of the demerol; and the jury disagreed. The jury was out seven hours. Then, the District Attorney, on March 7, 1968, on oral application, suddenly, with no indication of any forewarning, and with a jury panel in the courtroom, and over opposition, successfully moved to consolidate the untried charge involving marijuana with the charge involving demerol, which had previously resulted in a hung jury. The record of the motion indicates that the previous trial was not mentioned. Defendant's attorney did argue that he would be prejudiced, that different times and different codefendants were involved. Nevertheless, the court, without explanation, peremptorily ordered consolidation. A trial was immediately commenced, March 7, 1968, and on March 18, 1968, the defendant was found guilty of both indictments. The jury was out less than three hours. Was he then deprived of a fair trial? Was the joinder, under the circumstances, prejudicial? The joinder is susceptible of the conclusion that the purpose was tactical. And the trial record indicates the prosecutor achieved his purpose of portraying the defendant as a classical " seller " type. This he did, not by demonstrating sales, there allegedly were only two, but by an exhaustive cross-examination into collateral matters, unrelated to the alleged sales, and to repetitive characterizations of the defendant as a seller, during summation. Further, I am not at all sure that. since his guilt was assayed by the first jury, in a trial free from error, that subjecting him to a second trial did not run afoul of the " double jeopardy " prohibition. The first jury was obviously not free from reasonable doubt. And the second trial made him run the gauntlet again at a time when all the advantage had passed to the prosecutor; he, the prosecutor, indubitably was more wary and knowledgeable than the first time, and he had the added weapon of the marijuana

charge. All in all, following a hung jury, I do not think the second trial, this time on two indictments, under these circumstances, measures up to a test of fundamental fairness. (See Double Jeopardy Clause of the Fifth Amendment — A Case for Acquittal by Hung Jury, A. C. Stream, N. Y. L. J., Oct. 2, 1970, p. 1, col. 4.) And it may be noted that in a recent case, the Supreme Court of the United States upheld the ruling of the United States District Court of Utah that a defendant had been placed in double jeopardy by a second trial for the same offense held following a declaration of a mistrial by the Trial Judge. (*United States* v. *Jorn,*—U. S.—.) Speaking for the court, Justice HARLAN said: "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." Moreover, section 430 of the Code of Criminal Procedure provides that upon the occurrence of a hung jury, "*the cause* may be again tried at the same or another time". (Italics mine.) Mark: the statute singles out a specific singular cause, "the cause", meaning the same, isolated cause already tried before, may be tried again. I do not think it sophistry to say this specification precludes a joinder with another, and untried cause, particularly when the joinder is designed by a prosecutor to strengthen his hand, enhancing his chance of a conviction on a cause previously lost, when tried alone. This, to me, also breaks the ground rules and is not "cricket". And, before we set our seal of approval on a mandatory seven-year sentence on a 22-year old first offender, with a record of mental disturbance, other points merit consideration. First, section 279 of the code may permit a consolidation of indictments, but only "for two or more acts or transactions connected together or constituting parts of a common scheme or plan, or for two or more acts or transactions constituting crimes of the same or a similar character". Here, we have but two relatively small transactions involving different substances, different personalities, different codefendants, separate in time, the principal common denominator being an undercover policeman. The Trial Judge had it within his discretion to refuse the joinder. In my view, granting the application demonstrably prejudiced the defendant, and to the extent of the grant, represented an abuse of discretion. (See *United States ex rel. Tarallo* v. *La Vallee,* 433 F. 2d 4.) This is particularly so, since the move involved "an attempt to augment the chances of conviction". (See *United States* v. *Jorn,*—U. S.—, *supra.*) Secondly, I am uneasy about the submission of the case to the jury on a "go for broke" theory. True, counsel acquiesced, but when the case went to the jury on a single question, i.e., "the sales", the jury was deprived of the opportunity of finding defendant guilty of the lesser crimes set forth in the indictments, and perhaps more condign with the offense, if any. The gamble here was particularly hazardous, since only a few months before, a jury of his peers refused to find defendant guilty of the sale of demerol, after a full and flawless trial. All in all, in my judgment, the trial and the punishment do not fit the offense. We have here a young, misguided youth, disturbed also, I believe, estranged from his anguished parents, "doing his thing" in the Village. But not the despicable and professional "pusher", whom the law abhors and execrates with a seven-year mandatory sentence. Already, to the date of this writing, Bruce Simon has been in jail over nine months. Whatever he has done, as a first offender, I think the time already served will satisfy justice and salvage him from the irretrievable wreckage seven years of incarceration would work upon him. And of current interest is legislation before the State Legislature drastically to revise downward

penalties relative to marijuana. The Temporary State Commission to Evaluate the Drug Laws has recently recommended that a first offense of simple possession of less than a quarter ounce of marijuana be treated as a non-criminal violation, with a maximum penalty of 15 days in jail. (N. Y. L. J., Jan. 26, 1971, p. 1, col. 6; *New York Times,* Jan. 26, 1971.) Thus, I would reverse the judgment and grant the appellant new trials.